IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RALPH GRAGG, : | |
| : | Case No. 2:20-cv-5708 |
| Plaintiff, : | |
| : | CHIEF JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | MAGISTRATE JUDGE JOLSON |
| UPS PENSION PLAN, : | |
| : | |
| Defendant. : | |

**OPINION & ORDER**

This matter is before the Court on the parties' cross Motions for Judgment on the Administrative Record. (ECF Nos. 13, 17). Having reviewed this matter and concluding that these motions are appropriate for resolution without oral argument and for the reasons set forth below, Defendant's Motion for Judgment on the Administrative Record (ECF No. 17) is **GRANTED**, and Plaintiff's Motion (ECF No. 13) is **DENIED**.

I. BACKGROUND

A. Factual Background

Plaintiff Ralph Gragg, a West Virginia resident, worked for Overnite Transportation Company ("Overnite") from 1979 until 2005. (ECF No. 1 at ¶¶ 5, 7). In 2005, United Parcel Service (UPS) purchased Overnite, and Plaintiff became an employee of "UPS Freight" until his retirement in 2010. (*Id*., ¶ 14; ECF No. 13 at 4). Under the terms of that acquisition, UPS assumed responsibility for the pension benefits Plaintiff had accumulated while employed by Overnite. (*Id*., ¶ 8). During this period, UPS maintained two separate retirement plans, regulated by the Employee Retirement Income Security Act ("ERISA"): the USP Retirement Plan and the USP Pension Plan. (*Id*., ¶ 9). Former Overnite employees, like Plaintiff, earned benefits under the Retirement Plan,

1

Pension Plan, or both, based on their time of employment with UPS and their particular job. (ECF No. 12-1 at 55). Given his initial job classification at USP, the amount of benefit credit from Plaintiff's prior service at Overnite was accrued under the Retirement Plan. (*Id*.). In August 2008, however, Plaintiff's job classification changed, and he began accruing benefit credit under the Pension Plan, while his benefit service accruals under the Retirement Plan ceased. (*Id*.). As a result, at the time of his retirement, Plaintiff had accrued benefits under both Plans. (ECF No. 13 at 4).

Each plan had options participants could elect when they were eligible to retire and ready to receive benefits. (ECF No. 17 at 5). As relevant here, one option, available at either age sixty-two (62) or sixty-five (65), was a "Social Security Leveling Option."[1] The applicable regulations from the Internal Revenue Service ("IRS") define a "Social Security Leveling Option" as:

> a feature with respect to an optional form of benefit commencing prior to a participant's expected commencement of social security benefits that provides for a temporary period of higher payments which is designed to result in an approximately level amount of income when the participant's estimated old age benefits from Social Security are taken into account.

26 C.F.R. § 1.411(d)–3(g)(16). Simply put, a Social Security Leveling option allows a participant to begin drawing his retirement benefits before they reach retirement age. (ECF No. 13 at 2). When an individual decides to retire before reaching Social Security retirement age, this option allows them to receive an increased monthly benefit amount, above what they would have otherwise been entitled to receive. (*Id*. at 2–3). Once that individual reaches Social Security retirement age (and begins drawing Social Security retirement benefit), the plan then reduces that monthly benefit amount below what the participant would otherwise be entitled to receive. (*Id*. at 3). This option, then, provides the participant with an approximately level amount of income for the duration of time they draw pension. (*Id*.). Thus, after age sixty-five (65), a majority of the monthly benefit

---

[1] These options were available to Plaintiff, and other former Overnite employees, pursuant to "grandfather clauses" in each of the Plans. (*See* ECF No. 12-1 at 271; ECF No. 12-2 at 489–90).

would be paid by Social Security with the relatively small amount being paid by the Plan. (ECF No. 17 at 6).

When Plaintiff indicated he planned to retire, each Plan sent him an estimated benefit summary listing every benefit option and the amount Plaintiff, his spouse, or survivor would receive. (*Id*.). On June 18, 2010, the Pension Plan sent Plaintiff the following summary listing:

| Benefit | Monthly Amount |
|---|---|
| Single-Life Only Annuity: | $868.84 |
| Single Life Certain Annuity With 10-Year Certain Guarantee: | $847.38 |
| Qualified Joint & 50% Surviving Spouse Annuity: | $800.46 (Participant's Benefit) <br> $400.23 (Spouse's Benefit) |
| Qualified Joint & 75% Survivor Annuity: | $752.68 (Participant's Benefit) <br> $564.51 (Survivor's Benefit) |
| Qualified Joint & 100% Survivor Annuity: | $742.08 (Participant's Benefit) <br> $742.08 (Survivor's Benefit) |
| Social Security Leveling Option - Age 62 <br>   Before age 62: <br>   After age 62: | <br> $1,818.93 <br> $409.93 |
| Social Security Leveling Option - Age 65 <br>   Before age 65: <br>   After age 65: | <br> $1,789.87 <br> $35.87 |

(ECF No. 12-1 at 60). On the same day, the Retirement Plan sent Plaintiff the following summary listing:

| Benefit | Monthly Amount |
|---|---|
| Single-Life Only Annuity: | $1,250.27 |
| Single Life Certain Annuity With 10-Year Certain Guarantee: | $1,219.39 |
| Qualified Joint & 50% Surviving Spouse Annuity: | $1,151.87 (Participant's Benefit) <br> $575.94 (Spouse's Benefit) |

3

| | |
|---|---|
| Qualified Joint & 75% Survivor Annuity: | $1,083.11 (Participant's Benefit) |
| | $812.33 (Survivor's Benefit) |
| Qualified Joint & 100% Survivor Annuity: | $1,067.86 (Participant's Benefit) |
| | $791.36 (Survivor's Benefit) |
| Social Security Leveling Option - Age 62 | |
|   Before age 62: | $2,200.36 |
|   After age 62: | $791.36 |
| Social Security Leveling Option - Age 65 | |
|   Before age 65: | $2,171.30 |
|   After age 65: | $417.30 |

(ECF No. 12-1 at 40). On June 28, 2010, Plaintiff submitted his retirement paperwork, electing the "Social Security Leveling Option – Age 65" under both Plans. (ECF No. 13 at 5).

On July 12, 2010, the Retirement Plan sent Plaintiff a notice that his retirement had been authorized by the Plan's Board and he would receive his first payment in August. (ECF No. 12-1 at 36). This Notice specifically detailed that "[b]ecause [Plaintiff] elected the Social Security Leveling Option age 65 . . . the benefit amount of $1,789.87 is payable through July 1, 2018 and beginning August 1, 2018, [his] benefit [would] be adjusted to $35.87, less deductions." (*Id.*). That same day, Plaintiff received a similar Notice from the Pension Plan, recognizing his retirement had been authorized by the Plan's Board and he would receive his first payment in August. (ECF No. 21-2 at 402). This Notice similarly stated that "[b]ecause [Plaintiff] elected the Social Security Leveling Option age 65 . . . the benefit amount of $2,171.30 is payable through July 1, 2018 and beginning August l, 2018, [his] benefit [would] be adjusted to $417.30, less deductions." (*Id.*). Each plan began issuing Plaintiff monthly payments on August 1, 2010. (*Id.*).

When Plaintiff turned sixty-five (65) in February 2018, his monthly payments from each plan were reduced with the assumption that he would then be receiving Social Security benefits. (ECF No. 13 at 5). Plaintiff claims, however, that his payments were improperly reduced by twice

4

the amount of his Social Security benefit. (*Id*. at 6). And, as a result, his monthly benefit dropped from $3,961.17 per month to $2,207.17 per month. (*Id*.).

On February 17, 2019, and again on March 15, 2019, Plaintiff wrote to Plan[2] officials, stating he "believe[d] an honest mistake was made in the calculation formula for [his] leveling option[.]" (ECF No. 21-1 at 52). On July 23, 2019, the Plan's trustees responded to Plaintiff's second letter by setting forth both calculations Plaintiff received in 2010 and concluding that Plaintiff was properly being paid those same amounts. (ECF No. 12-2 at 55). While the letter did not admit error, it did show an alternative calculation to explain why Plaintiff was incorrect. (*Id*.).

On November 2, 2020, Plaintiff filed the instant action, seeking to recover benefits due to him under the terms of the Plans, to enforce his rights under the Plans, and to clarify his rights to future benefits under the Plans. (*See* ECF No. 1 at ¶ 30). Defendant filed its Answer on January 4, 2021 (ECF No. 4), and the relevant administrative shortly thereafter (ECF No. 12). Upon the filing of the record, each party moved for judgment there upon. (ECF Nos. 13, 17). Each timely responded and replied (ECF Nos. 20, 23), making the Motions ripe for review.

## II. STANDARD OF REVIEW

This Court reviews an ERISA plan administrator's termination of benefits *de novo* "unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). If the plan gives the administrator discretionary authority to determine eligibility for benefits, the Court reviews the administrator's decision under the highly deferential "arbitrary and capricious" standard. *Id*.

Plaintiff alleges that because Defendant has not put forth any evidence to support requiring "arbitrary and capricious" review, this Court should review his claim *de novo*. (ECF No. 20 at 5–

---

[2] Effective January 1, 2013, UPS consolidated Plaintiff's pension and retirement benefits into Plan 001. (ECF No. 13 at 4–5). This consolidation did not change any of the aforementioned benefit amounts. (ECF No. 17 at 8–9).

5

6). Defendant, meanwhile, highlights language in both Plans which states that "the Trustees shall have the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan[.]" (*See* ECF No. 21-1 at 119; ECF No. 12-2 at 511). The Supreme Court, guided by principles of trust law, has held that a deferential standard of review is required where "the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). As the aforementioned language clearly gives the Plan administrator exclusive authority in interpreting the Plans, this Court finds "arbitrary and capricious" review appropriate.

Under this deferential standard of review, when a plan administrator offers a "reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Evans v. Unum Provident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Perry v. United Food & Workers Dist. Unions 445 & 442*, 64 F.3d 238, 241 (6th Cir. 1995)). Put differently, this Court should consider whether the Plans' reduction of Plaintiff's monthly payments was "the result of a deliberate, principled reasoning process . . . supported by substantial evidence." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). Although this Court's review is deferential, "it is not a rubber stamp for the administrator's determination." *Id.* ("[D]eferential review is not no review."). This Court's review is confined to the administrative record. *Farhner v. United Transp. Union Discipline Income Prot. Prog.*, 645 F.3d 338, 343 (6th Cir. 2011).

### III. LAW & ANALYSIS

Plaintiff alleges Defendant miscalculated his benefits because it failed to consider that, although he was receiving his pension from two plans, he only received one Social Security retirement check. (ECF No. 13 at 9). He maintains that, under the terms of both Plans, the Trustees

6

are obligated to correct his benefit and assure he is receiving benefits in the form he elected. (*Id.*). To this point, Plaintiff highlights the following language, appearing in both Plans:

> If a benefit is paid by the Plan and it is later determined that the benefit should not be paid or that the benefit was overpaid (due to a mistake in benefit calculations or other errors), the Plan Administrator <u>will take action to correct the error and take necessary action to recover any overpayments</u> . . . [h]owever, if a mistake or other error results in <u>underpayment of a benefit amount, the Plan will recalculate the benefit and pay the amount due (without interest), as soon as administratively possible</u>.

(ECF No. 12-1 at 385; ECF No. 12-2 at 800) (emphasis added). Given the alleged miscalculation resulted in Plaintiff being underpaid for the past three years, and only the Plan's actuaries can calculate that loss, Plaintiff asks this Court to remand this matter to the Plan with instructions to calculate his loss and pay him appropriately. (ECF No. 13 at 9).

Defendant makes three arguments as to why it should be granted judgement on the administrative record. First, it argues that the relief Plaintiff seeks would violate the Internal Revenue Code, which requires that no option be more valuable than the Joint & Survivor Annuity option forms of benefits offered by the Plan. (ECF No. 17 at 16). Defendant maintains that granting Plaintiff the prospective relief he seeks, would result in the Social Security Leveling Option being higher than either Plan's Joint & Survivor Annuity options. (*Id.*). Second, Defendant argues that Plaintiff's claim is barred by the applicable statute of limitations. (*Id.* at 12–13). Finally, Defendant asserts that, regardless of its first two arguments, both Plans' actions were not arbitrary or capricious. (*Id.* at 14–17).

As this Court finds, as a threshold question, that the statute of limitations has lapsed, it does not address the parties' remaining arguments.

7

### A. Statute of Limitations

ERISA does not provide a statute of limitations for the recovery of plan benefits. *See Redmon v. Sud-Chemie Inc. Ret. Plan for Union Employees*, 547 F.3d 531, 534 (6th Cir. 2008) ("ERISA does not provide a statute of limitations for a claim for benefits under § 1132(a)(1)(B)"). As a result, Courts must look to one of two places for an applicable statute of limitations: the plan itself, or state law. *See Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763 (6th Cir. 2017) ("When a plan does not itself provide a limitations period, the Sixth Circuit applies the most analogous state statute of limitations of the forum state.") (internal quotations omitted).

Each Plan provides its own statute of limitations, through a choice of law provision, and although the Plans have since been consolidated, that consolidation did not alter each Plan's substance or effect. The Retirement Plan's choice of law provision points to Georgia law (ECF No. 12-2 at 128), while the Pension Plan's choice of law provision points to Connecticut law (ECF No. 12-1 at 518). The statute of limitations applicable to ERISA benefits claims under both Georgia and Connecticut law is six (6) years. *Harrison vs. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir. 1997) (Georgia's state statute of limitations applicable to ERISA claims is the six (6) year statute of limitations for contracts); *Cole v. Travelers Ins. Co.*, 208 F. Supp. 2d 248 (D. Conn. 2002) (same for Connecticut). The parties agree as to the applicable forums and statutes of limitations. (ECF No. 17 at 13; ECF No. 20 at 2).

While state law provides the applicable statute of limitations, the accrual of an ERISA claim is determined by federal law. *Patterson*, 845 F.3d at 763 ("[F]ederal common law determines when claims accrue under § 1132(a)(1)(B) for purposes of the statute of limitations."). The Sixth Circuit applies the "discovery rule" to determine when the statute of limitations for a § 1332(a)(1)(B) claims begins. *Id*. (citing *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 302

8

(6th Cir. 2006)). Under the discovery rule, "the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Redmon*, 547 F.3d at 535 (quotations omitted). Therefore, an ERISA claim accrues, for statute of limitations purposes, after a "clear and unequivocal repudiation of benefits, whether through formal or informal means[.]" *Patterson*, 845 F.3d at 764 (citing *Morrison*, 439 F.3d at 302).

Defendant asserts that Plaintiff's claim began to accrue in July 2010 when Plaintiff was notified by both Plans that his pension benefit would drop to a combined $455 the month after he became eligible to receive his Social Security benefit of $1,754 per month in August of 2018. (ECF No. 17 at 12). Given the applicable statute of limitations, Defendant argues Plaintiff's claim expired in July 2016, four years before he filed this action. (ECF No. 23 at 7).

Plaintiff offers three arguments why his claim is not time-barred: (1) the July 2010 notices do not constitute "a clear repudiation of benefits"; (2) his clam did not accrue until he had exhausted his administrative remedies; and (3) the "installment rule" governs the accrual of his cause of action. (ECF No. 20 at 2–6). This Court finds each argument without merit.

*1. Clear Repudiation*

"Under federal law, as under most laws, the limitations clock starts ticking 'when the claimant discovers or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994). In the context of a contractual claim, this clock begins when the breach becomes "clear and unequivocal." *Morrison*, 439 F.3d at 302. This mandate, however, does not require a "formal denial." *Patterson*, 845 F.3d at 763, n.7 (explaining that district courts holding that a "clear repudiation" requires a "formal denial," have misunderstood Sixth Circuit precedent). Moreover,

9

under the discovery rule, the statute of limitations begins to run when a plaintiff learns the benefits, to which he feels entitled, would be denied to him. *Id*. at 764.

This Court finds the Notices Plaintiff received in July 2010 were sufficient to put him on notice that, effective the month he turned 65, the combined amounts he would receive from each Plan would drop from $3,871.84 to $453.17. The Notices clearly laid out the amounts and the dates at which the benefit payments would change. Moreover, Plaintiff also received the same information a month earlier in the summary listings. Plaintiff cannot now say that the Plan's calculation is in error, when he was presented with this calculation upon entry into each Plan. While this repudiation, or rather statement of fact, may have not been "formal," it certainly alerted Plaintiff of his alleged injury. His Complaint alleges the Plans are paying him the incorrect amount. This amount, however, was presented to him when he entered each Plan. His unhappiness with that amount does not defeat accrual.

Accordingly, this Court finds Plaintiff's claim began accruing in July 2010 and accrued by July 2016. *See Mulder v. Loc. 705, Int'l Bhd. of Teamsters Pension Fund*, No. 1:16-CV-1451, 2018 WL 9651081, *7 (W.D. Mich. Aug. 7, 2018) (rev'd on other grounds by 794 F. App'x 451 (6th Cir. 2019) (holding plaintiff was "indisputably put on notice" he had not received a specific benefit under the plan the moment the plan sent him the amount of his benefit)); *Fallin v. Commonwealth Indus., Inc. Cash Balance Plan*, 521 F. Supp. 2d 592, 597 (W.D. Ky. 2007), aff'd sub nom. *Fallin v. Commonwealth Indus., Inc.*, 695 F.3d 512 (6th Cir. 2012) (finding that collecting a lump sum payment of retirement benefits, in a smaller amount than plaintiff claimed was due and owed under an ERISA plan, satisfied the clear repudiation rule because "any expectation of a sum greater than what was received was repudiated at that time, and could not reasonably have been maintained beyond that point").

10

2. *Exhaustion*

Plaintiff next argues that his claim did not accrue until he had exhausted his administrative remedies. (ECF No. 20 at 2). He asserts that because this Court is required to review the agency record to adjudicate this dispute, review cannot occur before an administrative decision is made. (*Id*. at 3 (citing *Soto v. Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018)).

The Sixth Circuit, however, has rejected this argument. In *Redmond*, the plaintiff argued that her claim did not accrue until she exhausted her administrative remedies—until she made a formal request for benefits and was formally denied. 547 F.3d at 539. In rejecting that argument, the Circuit Court reasoned:

> Exhaustion furthers "[t]he important public policy of encouraging private rather than judicial resolution of disputes under ERISA." *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir.1994). That is why exhaustion generally is a bar to filing suit. Redmon turns the exhaustion requirement on its head, arguing that her failure to utilize private avenues of dispute resolution should permit her to bring a claim in federal court that would otherwise be time-barred. If Redmon is correct, her claim might never accrue and the statute of limitations would never expire, *see Fallin*, 521 F.Supp.2d at 597, contrary to the policy of repose.

(*Id*.). This position has been cited several times since as an "explicit[] reject[ion]" of the argument that a claim accrues only upon exhaustion of administrative remedies. *See Patterson*, 845 F.3d at 763, n.7; *D.S.S. v. Prudential Ins. Co. of Am.*, No. 3:20-CV-248-CRS, 2021 WL 1069040, *9 (W.D. Ky. Mar. 19, 2021), aff'd sub nom. D.S.S. by & through *McDowell v. Prudential Ins. Co. of Am.*, No. 21-5315, 2022 WL 95165 (6th Cir. Jan. 10, 2022).

3. *Installment Rule*

Finally, Plaintiff argues that the installment rule should govern the accrual of his cause of action. (ECF No. 20 at 5–6) He asserts that the Plans operate like installment contracts, as their terms provided that his benefit would be paid to him in installments, monthly over his lifetime. (*Id*. at 5). As a result, given the Supreme Court's ruling in, *Bay Area Laundry & Dry Cleaning*

*Pension Tr. Fund v. Ferbar Corp. of California*, the installment rule applies and a new cause of action accrues in every month that the Plans pay him an incorrect amount. (*Id.* (citing 522 U.S. 192, 208 (1997)). Since he has continued to receive deficient monthly payments, Plaintiff asserts that his claim is not time-barred. (*Id.*).

*Bay Area Laundry* involved a dispute between a Plan and an employer over "withdrawal liability" under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). 522 U.S. at 193. The Court found that the MPPAA, by its nature, created an installment contract between the Plan and employer, which allows for "a new cause of action, carrying its own limitations period, [] from the date each payment is missed." *Id*. at 194.

This Court does not find the installment rule applicable to this type of ERISA dispute, and Plaintiff has not offered any case law pointing to the contrary. As a threshold consideration, the MPPAA is not at issue here. Moreover, the *Bay Area Laundry* decision does not suggest the installment rule should be applied in all pension plan cases under ERISA. (*See generally id*.). The dispute in *Bay Area Laundry* revolved around an agreement between a Plan and an employer who was required to contribute there to. This Court finds those facts too unanalogous to those currently before it to warrant adopting Plaintiff's argument. Furthermore, adopting the installment rule for § 1332(a)(1)(B) claims would effectively cause the statute of limitations to never expire, which is "contrary to the policy of repose." *Redmond*, 547 F.3d at 540.

\* \* \*

Accordingly, this Court finds that Plaintiff's claim began to accrue when each Plan sent him a Notice detailing his monthly payments on July 12, 2010. Given the applicable statutes of limitation from Georgia and Connecticut, Plaintiff's claim expired on July 12, 2016. Plaintiff waited until December 2020 to initiate this action, and, therefore, his claim is time-barred.

Moreover, "Plaintiff's exceptionally long delay in bringing [his] case undercuts" any potential reliance on equitable principles. *Patterson*, 845 F.3d at 765 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) ("Under long-established principles, [a plaintiff's] lack of diligence precludes equity's operation.")).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Administrative Record (ECF No. 17) is **GRANTED**, and Plaintiff's Motion (ECF No. 13) is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 31, 2022**