IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RALPH L. GRAGG, | : | |
| | : | Case No. 2:20-cv-5708 |
| **Plaintiff,** | : | |
| | : | Chief Judge Algenon L. Marbley |
| v. | : | |
| | : | Magistrate Judge Kimberly A. Jolson |
| UPS PENSION PLAN, | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on the parties' cross Motions for Judgment as a Matter of Law. (ECF Nos. 35, 36). For the reasons that follow, both parties' Motions are **DENIED**.

### I. BACKGROUND

Plaintiff Ralph Gragg, a West Virginia resident, worked for Overnite Transportation Company ("Overnite") from 1979 until 2005. (ECF No. 1 at ¶¶ 5, 7). In 2005, United Parcel Service (UPS) purchased Overnite, and Plaintiff became an employee of "UPS Freight" until his retirement in 2010. (*Id*., ¶ 14; ECF No. 13 at 4). Under the terms of that acquisition, UPS assumed responsibility for the pension benefits Plaintiff had accumulated while employed by Overnite. (*Id*., ¶ 8). During this period, UPS maintained two separate retirement plans, regulated by the Employee Retirement Income Security Act ("ERISA"): the USP Retirement Plan and the USP Pension Plan. (*Id*., ¶ 9). Former Overnite employees, like Plaintiff, earned benefits under the Retirement Plan, Pension Plan, or both, based on their time of employment with UPS and their particular job. (ECF No. 12-1 at 55). Given his initial job classification at USP, the amount of benefit credit from Plaintiff's prior service at Overnite was accrued under the Retirement Plan. (*Id*.). In August 2008, however, Plaintiff's job classification changed, and he began accruing benefit credit under the

1

Pension Plan, while his benefit service accruals under the Retirement Plan ceased. (*Id.*). As a result, at the time of his retirement, Plaintiff had accrued benefits under both Plans. (ECF No. 13 at 4).

Each plan had options participants could elect when they were eligible to retire and ready to receive benefits. (ECF No. 17 at 5). As relevant here, one option, available at either age sixty-two (62) or sixty-five (65), was a "Social Security Leveling Option."[1] The applicable regulations from the Internal Revenue Service ("IRS") define a "Social Security Leveling Option" as:

> a feature with respect to an optional form of benefit commencing prior to a participant's expected commencement of social security benefits that provides for a temporary period of higher payments which is designed to result in an approximately level amount of income when the participant's estimated old age benefits from Social Security are taken into account.

26 C.F.R. § 1.411(d)–3(g)(16). Simply put, a Social Security Leveling option allows a participant to begin drawing his retirement benefits before he reaches retirement age. (ECF No. 13 at 2). When an individual decides to retire before reaching Social Security retirement age, this option allows him to receive an increased monthly benefit amount, above what he would have otherwise been entitled to receive. (*Id.* at 2–3). Once that individual reaches Social Security retirement age (and begins drawing Social Security retirement benefit), the plan then reduces that monthly benefit amount below what the participant would otherwise be entitled to receive. (*Id.* at 3). This option, then, provides the participant with an approximately level amount of income for the duration of time he draws his pension. (*Id.*). Thus, after age sixty-five (65), a majority of the monthly benefit would be paid by Social Security with the relatively small amount being paid by the Plan. (ECF No. 17 at 6).

When Plaintiff indicated he planned to retire, each Plan sent him an estimated benefit

---

[1] These options were available to Plaintiff, and other former Overnite employees, pursuant to "grandfather clauses" in each of the Plans. (See ECF No. 12-1 at 271; ECF No. 12-2 at 489–90).

summary listing every benefit option and the amount Plaintiff, his spouse, or survivor would receive. (*Id.*). On June 18, 2010, the Pension Plan sent Plaintiff the following summary listing:

| Benefit | Monthly Amount |
|---|---|
| Single-Life Only Annuity: | $868.84 |
| Single Life Certain Annuity With 10-Year 38 Certain Guarantee: | $847. |
| Qualified Joint & 50% Surviving Spouse Benefit) Annuity: | $800.46 (Participant's) $400.23 (Spouse's Benefit) |
| Qualified Joint & 75% Survivor Annuity: $564.51 (Survivor's Benefit) | $752.68 (Participant's Benefit) |
| Qualified Joint & 100% Survivor Annuity: $742.08 (Survivor's Benefit) | $742.08 (Participant's Benefit) |
| Social Security Leveling Option - Age 62 Before age 62: After age 62: | $1,818.93 $409.93 |
| Social Security Leveling Option - Age 65 Before age 65: After age 65: | $1,789.87 $35.87 |

(ECF No. 12-1 at 60). On the same day, the Retirement Plan sent Plaintiff the following summary listing:

| Benefit | Monthly Amount |
|---|---|
| Single-Life Only Annuity: | $1,250.27 |
| Single Life Certain Annuity With 10-Year 39 Certain Guarantee: | $1,219. |
| Qualified Joint & 50% Surviving Spouse Benefit) Annuity: | $1,151.87 (Participant's) $575.94 (Spouse's Benefit) |
| Qualified Joint & 75% Survivor Annuity: $812.33 (Survivor's Benefit) | $1,083.11 (Participant's Benefit) |
| Qualified Joint & 100% Survivor Annuity: | $1,067.86 (Participant's |

3

Benefit)
$791.36 (Survivor's Benefit)

Social Security Leveling Option - Age 62
Before age 62: $2,200.36
After age 62: $791.36

Social Security Leveling Option - Age 65
Before age 65: $2,171.30
After age 65: $417.30

(ECF No. 12-1 at 40). On June 28, 2010, Plaintiff submitted his retirement paperwork, electing the "Social Security Leveling Option – Age 65" under both Plans. (ECF No. 13 at 5).

On July 12, 2010, the Retirement Plan sent Plaintiff a notice that his retirement had been authorized by the Plan's Board and he would receive his first payment in August. (ECF No. 12-1 at 36). This Notice specifically detailed that "[b]ecause [Plaintiff] elected the Social Security Leveling Option age 65 . . . the benefit amount of $1,789.87 is payable through July 1, 2018 and beginning August 1, 2018, [his] benefit [would] be adjusted to $35.87, less deductions." (*Id.*). That same day, Plaintiff received a similar Notice from the Pension Plan, recognizing his retirement had been authorized by the Plan's Board and he would receive his first payment in August. (ECF No. 21-2 at 402). This Notice similarly stated that "[b]ecause [Plaintiff] elected the Social Security Leveling Option age 65 . . . the benefit amount of $2,171.30 is payable through July 1, 2018 and beginning August l, 2018, [his] benefit [would] be adjusted to $417.30, less deductions." (*Id.*). Each plan began issuing Plaintiff monthly payments on August 1, 2010. (*Id.*).

When Plaintiff turned sixty-five (65) in February 2018, his monthly payments from each plan were reduced with the assumption that he would then be receiving Social Security benefits. (ECF No. 13 at 5). Plaintiff claims, however, that his payments were improperly reduced by twice the amount of his Social Security benefit. (*Id.* at 6). And, as a result, his monthly benefit dropped from $3,961.17 per month to $2,207.17 per month. (*Id.*).

4

On February 17, 2019, and again on March 15, 2019, Plaintiff wrote to Plan officials, stating he "believe[d] an honest mistake was made in the calculation formula for [his] leveling option[.]" (ECF No. 21-1 at 52). On July 23, 2019, the Plan's trustees responded to Plaintiff's second letter by setting forth both calculations Plaintiff received in 2010 and concluding that Plaintiff was properly being paid those same amounts. (ECF No. 12-2 at 55). While the letter did not admit error, it did show an alternative calculation to explain why Plaintiff was incorrect. (*Id.*).

On November 2, 2020, Plaintiff filed the instant action, seeking to recover benefits due to him under the terms of the Plans, to enforce his rights under the Plans, and to clarify his rights to future benefits under the Plans. (*See* ECF No. 1 at ¶ 30). Defendant filed its Answer on January 4, 2021 (ECF No. 4), and the relevant administrative record shortly thereafter. (ECF No. 12). Upon the filing of the record, each party moved for judgment on the pleadings. (ECF Nos. 13, 17). Each timely responded and replied (ECF Nos. 20, 23), and this Court denied Plaintiff's Motion for Judgement as a Matter of Law (ECF No. 13) and granted Defendant's Motion for Judgement on the Administrative Record (ECF No. 17) on March 31, 2022. (ECF No. 25).

On March 31, 2023, Defendant filed a Motion for Judgement as a Matter of Law (ECF No. 35), and Plaintiff filed a Motion for Judgement as a Matter of Law on the Administrative Record (ECF No. 36). On May 10, 2023, each party properly responded to the cross motions (ECF Nos. 41, 42) and on June 21, 2023, Defendant filed a supplemental memorandum supporting its Motion for Judgement as a Matter of Law. (ECF No. 46). The Motions are now ripe for review.

## II. STANDARD OF REVIEW

A court may grant judgment as a matter of law when a party has been fully heard on an issue and the court determines that a reasonable jury would not have legally sufficient evidence to find for the party. Fed. R. Civ. P. 50(a)(1). If a court does not grant the motion and submits the

5

case to a jury, the court retains the ability later to decide the legal questions upon a renewed motion for a judgment as a matter law. Fed. R. Civ. P. 50(b).

When addressing a motion for judgment as a matter of law under Rule 50, the inquiry is the same as for summary judgment under Rule 56. *White v. Burlington Northern & Santa Fe Ry.*, 364 F.3d 789, 794 (6th Cir. 2004). A district court may issue judgment as a matter of law "when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005). When there are inferences that can be drawn from the record, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *White*, 364 F.3d at 794. A district court should grant a judgment as a matter of law "only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 427 (6th Cir. 2004).

The standard of review does not change when the parties file cross-motions. *Cf. Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for *summary judgment* do not change simply because the parties present cross-motions.") (emphasis added). In *Taft*, the Sixth Circuit set forth the standard in reviewing cross-motions for summary judgment. That standard is that "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft*, 929 F.2d 240, 248, quoting *Home for Crippled Children v. Prudential Ins. Co.*, 590 F.Supp. 1490, 1495 (W.D.Pa.1984). Simply put, the

standard of review on cross-motions is the same as the standard for unilateral summary judgment motions. Because the standard for addressing a motion for judgment as a matter of law under Rule 50 is the same as for summary judgment, this Court can apply the standard set forth in *Taft*. *White*, 364 F.3d 789, 794. A court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

This Court reviews an ERISA plan administrator's termination of benefits *de novo* "unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). If the plan gives the administrator discretionary authority to determine eligibility for benefits, the Court reviews the administrator's decision under the highly deferential "arbitrary and capricious" standard. (*Id.*)

### III. LAW & ANALYSIS

Plaintiff alleges Defendant miscalculated his benefits because it failed to consider that, although he was receiving his pension from two plans, he only received one Social Security retirement check. (ECF No. 13 at 9). He maintains that, under the terms of both Plans, the Trustees are obligated to correct his benefit and assure he is receiving benefits in the form he elected. (*Id.*). Both the UPS Retirement Plan and UPS Pension Plan estimated that Plaintiff's benefit would be cut by $1,754, the full amount of his Social Security retirement benefit, after he turned 65. (ECF No. 36 at 7). Plaintiff further argues that the letters he received from each plan contained the same errors as their corresponding applications, each indicating that his benefit would "be adjusted to" an amount $1,754 smaller than the pre-65 benefit. (ECF No. 36 at 8).

Plaintiff correctly highlights that in this Court and in the Sixth Circuit, Defendant has pointed to the pair of form letters that the UPS plans mailed to Plaintiff in July 2010 to justify its

7

refusal to provide him a leveled benefit. This Court does not find that Defendant is obligated to pay Plaintiff according to the terms of the form letters. Indeed, it is the terms of the plan that control. "The plan . . . is at the center of ERISA." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013). As Plaintiff goes on to state, "in determining whether benefits [are] due under the Plan, the starting point is the language of the Plan itself." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2022) (citing *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1374 (6th Cir. 1994), and *Callahan v. Rouge Steel Co.*, 941 F.2d 456, 460 (6th Cir. 1991)).

When reviewing the terms of a benefit plan, this Court is "to 'construe [the] ERISA plan with a view toward effectuating its general purpose.'" *Farhner*, 645 F.3d at 338 (quoting *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006)) (alteration in original). Further, this Court is disinclined to find "technical construction[s] of a policy's language which would defeat a reasonable expectation of coverage." *Citizens Ins. Co. of Am. v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688, 692 (6th Cir. 2006) (citation omitted). Finally, "the most important factor to weigh is the language of the plan itself as known by the employees, or as the employees should have known." *Callahan*, 941 F.2d at 460 (citing *Rhoton v. Cent. States Pension Fund*, 717 F.2d 988, 990 (6th Cir. 1983)); *cf. Stockman v. GE Life, Disability & Med. Plan*, 625 F. App'x 243, 250 (6th Cir. 2015) (noting that courts "have the 'paramount responsibility in construing plan language … to ascertain and effectuate the underlying intent'") (citation omitted, alteration in original). (ECF No. 36 at 11).

Finally, a plan "amendment which has the effect of … eliminating or reducing an early retirement benefit[, or] … eliminating an optional form of benefit, … with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits." ERISA

§ 204(g)(2), 29 U.S.C. § 1054(g)(2). (ECF No. 36 at 16). The anti-cutback rule of ERISA prohibits Defendant from enforcing an interpretation of plan language that reduces the value of Plaintiff's accrued benefit owing to his Overnite service. *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000).

Defendant argues that Plaintiff's request is not permitted by law according to the Internal Revenue Code. (ECF No. 35 at 3). By offering a Social Security Leveling Option – Age 65 benefit, Defendant claims, in the amount Plaintiff wants, the total would exceed the actuarial equivalent of Qualified Joint & Survivor Annuity benefit options. (*Id.*) It is true that the Internal Revenue Code prohibits any option being greater than the Qualified Joint & Survivor Annuity options. 26 C.F.R. §1.401(a)-11(b)(2). However, this Court is not convinced by this all-or-nothing approach.

The evidence offered by the parties is not so overwhelming that a reasonable jury could not find for either party. Taking both arguments in turn, this Court is bound by the Sixth Circuit to construe the ERISA plan with a view toward effectuating its general purpose. *Farhner*, 645 F.3d at 338. Certainly, the general purpose of a pension plan is to care for the employees who have dutifully and loyally carried out their responsibilities over a long career. Technical constructions of the plan's language which defeat a reasonable expectation of coverage would run against the interests of justice, depriving the Plaintiff of the retirement benefits which he rightly earned. *Citizens Ins. Co. of Am.*, 449 F.3d 688, 692.

Defendant rightly argues that Plaintiff's claim, as stated, would violate the Internal Revenue Code. (ECF No. 35 at 3). However, the most important factor to consider here is the language of the plan *as known by the employees*. *Callahan*, 941 F.2d at 460. Here, Plaintiff knew the language of the plan to support him in his retirement years, as leveled with his Social Security benefits. Therefore, this Court cannot leave Plaintiff with no remedy at all. Defendant's calculation

9

of Plaintiff's post-65 benefit amount is to be set aside and recalculated in a manner that prorates his Social Security benefit amount, while taking care not to exceed the Qualified Joint & Survivor Annuity options under 26 C.F.R. §1.401(a)-11(b)(2).

## IV.   CONCLUSION

Accordingly, the parties' cross Motions for Judgment as a Matter of Law. (ECF Nos. 35, 36) are **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: November 14, 2023**