IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RALPH L. GRAGG,** | : | |
| | : | Case No. 2:20-cv-5708 |
| **Plaintiff,** | : | |
| | : | **Judge Algenon L. Marbley** |
| v. | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **UPS PENSION PLAN,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on the parties' cross Motions for Entry of Judgment. (ECF Nos. 49, 50). For the reasons that follow, Plaintiff's Motion is **DENIED** (ECF No. 49) and Defendant UPS Pension Plan's Motion is **GRANTED** (ECF No. 50).

### I.  BACKGROUND

This Court has previously set forth the factual and procedural background of this case. (ECF Nos. 24, 48).[1] Nonetheless, given the continued relevance of that background to the present analysis, this Court finds it appropriate to briefly recount the history of this matter once more.

Plaintiff Ralph Gragg, a West Virginia resident, worked for Overnite Transportation Company ("Overnite") from 1979 until 2005. (ECF No. 1 at ¶¶ 5, 7). In 2005, United Parcel Service (UPS) purchased Overnite, and Plaintiff became an employee of "UPS Freight" until his retirement in 2010. (*Id.*, ¶ 14; ECF No. 13 at 4). Under the terms of that acquisition, UPS assumed responsibility for the pension benefits Plaintiff had accumulated while employed by Overnite. (*Id.*, ¶ 8). During this period, UPS maintained two separate retirement plans, regulated by the Employee Retirement Income Security Act ("ERISA"): the UPS Retirement Plan and the UPS Pension Plan.

---

[1] Both parties reference the facts as provided in this Courts November 14, 2023, Opinion & Order (ECF No. 48).

(*Id*., ¶ 9). Former Overnite employees, like Plaintiff, earned benefits under the Retirement Plan, Pension Plan, or both, based on their time of employment with UPS and their particular job. (ECF No. 12-1 at 55). Given his initial job classification at UPS, the amount of benefit credit from Plaintiff's prior service at Overnite was accrued under the Retirement Plan. (*Id*.). In August 2008, however, Plaintiff's job classification changed, and he began accruing benefit credit under the Pension Plan, while his benefit service accruals under the Retirement Plan ceased. (*Id*.). As a result, at the time of his retirement, Plaintiff had accrued benefits under both Plans. (ECF No. 13 at 4). The UPS Pension Plan has since merged with the UPS Retirement Plan. Accordingly, this Court refers to the plans collectively as "the Plan."

Each plan had options participants could elect when they were eligible to retire and ready to receive benefits. (ECF No. 17 at 5). As relevant here, one option, available at either age sixty-two (62) or sixty-five (65), was a "Social Security Leveling Option."[2] The applicable regulations from the Internal Revenue Service ("IRS") define a "Social Security Leveling Option" as:

> a feature with respect to an optional form of benefit commencing prior to a participant's expected commencement of social security benefits that provides for a temporary period of higher payments which is designed to result in an approximately level amount of income when the participant's estimated old age benefits from Social Security are taken into account.

26 C.F.R. § 1.411(d)–3(g)(16). Simply put, a Social Security Leveling option allows a participant to begin drawing his retirement benefits before he reaches retirement age. (ECF No. 13 at 2). When an individual decides to retire before reaching Social Security retirement age, this option allows him to receive an increased monthly benefit amount, above what he would have otherwise been entitled to receive. (*Id*. at 2–3). Once that individual reaches Social Security retirement age (and

---

[2] These options were available to Plaintiff, and other former Overnite employees, pursuant to "grandfather clauses" in each plan. (See ECF No. 12-1 at 271; ECF No. 12-2 at 489–90).

begins drawing Social Security retirement benefit), the plan then reduces that monthly benefit amount below what the participant would otherwise be entitled to receive. (*Id*. at 3). This option, then, provides the participant with an approximately level amount of income for the duration of time he draws his pension. (*Id*.). Thus, after age sixty-five (65), a majority of the monthly benefit would be paid by Social Security with the relatively small amount being paid by each plan. (ECF No. 17 at 6).

When Plaintiff indicated he planned to retire, each plan sent him an estimated benefit summary listing every benefit option and the amount Plaintiff, his spouse, or survivor would receive. (*Id*.). On June 18, 2010, the Pension Plan sent Plaintiff the following summary listing:

| Benefit | Monthly Amount |
|---|---|
| Single-Life Only Annuity: | $868.84 |
| Single Life Certain Annuity With 10-Year Certain Guarantee: | $847.38 |
| Qualified Joint & 50% Surviving Spouse Annuity: | $800.46 (Participant's Benefit) $400.23 (Spouse's Benefit) |
| Qualified Joint & 75% Survivor Annuity: | $752.68 (Participant's Benefit) $564.51 (Survivor's Benefit) |
| Qualified Joint & 100% Survivor Annuity | $742.08 (Participant's Benefit) $742.08 (Survivor's Benefit) |
| Social Security Leveling Option - Age 62 Before age 62: After age 62: | $1,818.93 $409.93 |
| Social Security Leveling Option - Age 65 Before age 65: After age 65: | $1,818.93 $35.87 |

(ECF No. 12-1 at 60). On the same day, the Retirement Plan sent Plaintiff the following summary listing:

3

| Benefit | Monthly Amount |
|---|---|
| Single-Life Only Annuity: | $1,250.27 |
| Single Life Certain Annuity With 10-Year Certain Guarantee: | $1,219.39 |
| Qualified Joint & 50% Surviving Spouse Annuity: | $1,151.87 (Participant's Benefit) $575.94 (Spouse's Benefit) |
| Qualified Joint & 75% Survivor Annuity: | $1,083.11 (Participant's Benefit) $812.33 (Survivor's Benefit) |
| Qualified Joint & 100% Survivor Annuity | $1,067.86 (Participant's Benefit) $1,067.86 (Survivor's Benefit) |
| Social Security Leveling Option - Age 62 Before age 62: After age 62: | $2,200.36 $791.36 |
| Social Security Leveling Option - Age 65 Before age 65: After age 65: | $2,171.30 $417.30 |

(ECF No. 12-1 at 40). On June 28, 2010, Plaintiff submitted his retirement paperwork, electing the "Social Security Leveling Option – Age 65" under both Plans. (ECF No. 13 at 5).

On July 12, 2010, the Retirement Plan sent Plaintiff a notice that his retirement had been authorized by its Board and he would receive his first payment in August. (ECF No. 12-1 at 36). This Notice specifically detailed that "[b]ecause [Plaintiff] elected the Social Security Leveling Option age 65 . . . the benefit amount of $1,789.87 is payable through July 1, 2018 and beginning August 1, 2018, [his] benefit [would] be adjusted to $35.87, less deductions." (*Id*.). That same day, Plaintiff received a similar Notice from the Pension Plan, recognizing his retirement had been authorized by its Board and he would receive his first payment in August. (ECF No. 21-2 at 402). This Notice similarly stated that "[b]ecause [Plaintiff] elected the Social Security Leveling Option age 65 . . . the benefit amount of $2,171.30 is payable through July 1, 2018 and beginning August 1, 2018, [his] benefit [would] be adjusted to $417.30, less deductions." (*Id*.). Each plan began

4

issuing Plaintiff monthly payments on August 1, 2010. (*Id*.).

When Plaintiff turned sixty-five (65) in February 2018, his monthly payments from each plan were reduced with the assumption that he would then be receiving Social Security benefits. (ECF No. 13 at 5). Plaintiff claims, however, that his payments were improperly reduced by twice the amount of his Social Security benefit. (*Id*. at 6). And, as a result, his monthly benefit dropped from $3,961.17 per month to $2,207.17 per month. (*Id*.).

On February 17, 2019, and again on March 15, 2019, Plaintiff wrote to Plan officials, stating he "believe[d] an honest mistake was made in the calculation formula for [his] leveling option[.]" (ECF No. 21-1 at 52). On July 23, 2019, the Plan's trustees responded to Plaintiff's second letter by setting forth both calculations Plaintiff received in 2010 and concluding that Plaintiff was properly being paid those same amounts. (ECF No. 12-2 at 55). While the letter did not admit error, it did show an alternative calculation to explain why Plaintiff was incorrect. (*Id*.).

On November 2, 2020, Plaintiff filed the instant action, seeking to recover benefits due to him under the terms of the Plan, to enforce his rights, and to clarify his rights to future benefits. (*See* ECF No. 1 at ¶ 30). Defendant filed its Answer on January 4, 2021 (ECF No. 4), and the relevant administrative record shortly thereafter. (ECF No. 12). Upon the filing of the record, each party moved for judgment on the pleadings. (ECF Nos. 13, 17). Each timely responded and replied (ECF Nos. 20, 23), and this Court denied Plaintiff's Motion for Judgement as a Matter of Law (ECF No. 13) and granted Defendant's Motion for Judgement on the Administrative Record (ECF No. 17) on March 31, 2022. (ECF No. 25).

On March 31, 2023, Defendant filed a Motion for Judgement as a Matter of Law (ECF No. 35), and Plaintiff filed a Motion for Judgement as a Matter of Law on the Administrative Record (ECF No. 36). On May 10, 2023, each party properly responded to the cross motions (ECF Nos.

5

41, 42) and on June 21, 2023, Defendant filed a supplemental memorandum supporting its Motion for Judgement as a Matter of Law. (ECF No. 46).

When resolving the motions, this Court acknowledged that Plaintiff alleged the Plan miscalculated his benefits by treating him as if he received two Social Security retirement checks—one per pension plan—when in fact he received only one. It also recognized that Plaintiff's expectation of a single, leveled benefit was not unreasonable given the information provided at retirement. This Court further noted that offering a Social Security Leveling Option – Age 65 benefit in the amount Plaintiff seeks would cause the total to exceed the actuarial equivalent of the Qualified Joint & Survivor Annuity benefit options. The Internal Revenue Code, however, prohibits any optional form of benefit from exceeding those amounts. (ECF No. 48 at 9 (citing 26 C.F.R. §1.401(a)-11(b)(2))). Accordingly, this Court, unconvinced by an all-or-nothing approach, denied the motions and remanded Plaintiff's claim to the Plan for recalculation in a manner that would provide Gragg with a leveling benefit without violating any provisions of the Internal Revenue Code. (ECF No. 48 at 9–10).

On remand, the Plan sent a letter on December 21, 2023 with a new decision attempting to: (1) account for the total actuarial value of the benefit options so as to remain in compliance with federal law, and (2) prorate Plaintiff's Social Security Benefit Amount. (ECF 49-1 at 1). The Plan undertook this revised approach to address this Court's order and to "decrease in some way for some period of time the amount of Social Security offset while not making the overall value of the benefit violate 26 C.F.R. §1.410(a)-11(b)(2)." (ECF No. 50 at 9). In doing so, the Plan took the following steps:

- It honored Plaintiff's previous election under the UPS Pension Plan for the Social Security Leveling Option, leaving that benefit form entirely intact, including the single Social Security offset. (ECF No. 49-1 at 2).
- For the separate benefit elected under the UPS Retirement Plan, the Plan substituted the Single Life Annuity form of payment—an option carrying no Social Security offset—thereby maintaining actuarial equivalence and addressing Plaintiff's primary concern regarding the application of dual Social Security offsets. (ECF No. 49-1 at 2-4)

(ECF Nos. 49-1; 50 at 9-11).

As a result, Plaintiff received $2,171.30 per month from August 2010 through July 2018 under the Social Security Leveling Option, whereas he would have received only $1,250.27 per month had the Single Life Annuity been elected. Thus, he was overpaid during that period. (ECF No. 50 at 10). Beginning in August 2018, however, the Single Life Annuity provided a consistent monthly benefit of $1,250.27, compared to just $417.30 under the Social Security Leveling Option—an increase of $832.70 per month. When the overpayments and underpayments are netted, the Plan calculated that, as of December 2023, Plaintiff had been overpaid by $56,380.55, due to the larger payments advanced to him earlier under the Social Security Leveling Option. (*Id.*). Because of this overpayment, the Plan concluded that simply increasing Plaintiff's monthly benefit to the $1,250.27 level going forward would violate the Internal Revenue Code, as it would result in an overall actuarial value exceeding that of the qualified Joint and Survivor Annuity option required under the Plan. (*Id.* at 11).

To strike the balance contemplated by the Court, the Plan adopted a compromise approach: from 2024 through 2028, Plaintiff's monthly benefit under the UPS Retirement Plan would be increased to $750—over $300 more than he would have received under the original Social Security

7

Leveling Option. (ECF No. 50 at 11). Approximately $450 of that monthly amount would be applied toward recouping the overpayment. Beginning in 2029, when Plaintiff would be 78 years old, the monthly benefit would be reduced to $250, thereby completing the recovery of the prior overpayment. (ECF Nos. 49-1 at 3; 50 at 11). This provides Plaintiff with a greater benefit during his earlier years and defers the bulk of the repayment obligation until later years. (ECF No. 50 at 11).

On February 20, 2024, Plaintiff responded to the Plan's decision requesting that the Plan instead recognize that Plaintiff is receiving only one Social Security check each month and recoup the overpayment by reducing payment going forward until the amount of the overpayment had been recaptured. (ECF No. 49-2). The Plan did not respond to Plaintiffs proposal. Plaintiff now brings his proposed recalculation to this Court and requests that this Court enter judgment accordingly. (ECF No. 49).

## II. STANDARD OF REVIEW

This Court reviews an ERISA plan administrator's determination of benefits *de novo* "unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). If the plan gives the administrator discretionary authority to determine eligibility for benefits, the Court reviews the administrator's decision under the highly deferential "arbitrary and capricious" standard. (*Id.*)

The parties agree that the arbitrary and capricious standard applies here. Indeed, the Plan previously highlighted language in both Plans which states that "the Trustees shall have the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan[.]" (*See* ECF No. 21-1 at 119; ECF No. 12-2 at 511). The Supreme Court, guided by principles of trust law, has held that a deferential standard of review is required where

8

"the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). As the Plan language clearly gives the Plan administrator exclusive authority in interpreting the Plans, this Court finds that "arbitrary and capricious" review appropriate.

Under this deferential standard of review, the court must uphold the administrator's decision if their interpretation of the Plan's provisions is reasonable. *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009) (quoting *Morrison v. Marsh & McLennan Cos.,* 439 F.3d 295, 300 (6th Cir.2006) (internal quotation marks omitted). When a plan administrator offers a "reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Evans v. Unum Provident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Perry v. United Food & Workers Dist. Unions 445 & 442*, 64 F.3d 238, 241 (6th Cir. 1995)).

Put differently, this Court should consider whether the Plans' reduction of Plaintiff's monthly payments was "the result of a deliberate, principled reasoning process ... supported by substantial evidence." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). Although this Court's review is deferential, "it is not a rubber stamp for the administrator's determination." *Id.* ("[D]eferential review is not no review."). This Court's review is confined to the administrative record. *Farhner v. United Transp. Union Discipline Income Prot. Prog.*, 645 F.3d 338, 343 (6th Cir. 2011).

### III. LAW & ANALYSIS

Plaintiff requests that the Plan recalculate his monthly benefit as if, at the time of his retirement, all of his accrued benefit were payable to him from the single, merged Plan and as if it were payable to him under the Social Security leveling option. He argues that this hypothetical

9

calculation represents the amount he should have received since retirement and should continue to receive going forward. (ECF No. 49). The Plan opposes, filing a cross motion requesting that this Court confirm the appropriateness of its recalculation on remand and enter judgment accordingly. (ECF No. 50).

### A. The Plan's Decision

As an initial matter, Plaintiff's motion does not engage with the applicable arbitrary and capricious standard of review. (*See* ECF No. 49). Rather than addressing whether his proposal is reasonable, this Court's relevant inquiry is whether the Plan's decision was arbitrary and capricious. "The arbitrary and capricious standard of review asks only whether the [Plan's] interpretation of the Plan language is reasonable." *Whitehead v. Fed. Exp. Corp.*, 878 F.Supp. 1066, 1070 (W.D.Tenn. 1994) (citing *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1249 (6th Cir.1991)).

This Court previously emphasized that "the most important factor to weigh" in reviewing a plan administrator's decision "is the language of the plan itself as known by the employees, or as the employees should have known." *Callahan v. Rouge Steel Co*., 941 F.2d 456, 460 (6th Cir. 1991). In this case, the Sixth Circuit noted that Plaintiff had only two letters in July 2010 that, "if read together and without any preconception that his overall monthly benefits would in fact be 'leveled,'" would inform him "that, eight years' hence, those same benefits would actually decrease by some $1750." *Gragg v. UPS Pension Plan*, 55 F.4th 1059, 1062 (6th Cir. 2022).

In remanding the matter, this Court ordered the Plan to recalculate Plaintiff's post-65 benefit "in a manner that prorates his Social Security benefit amount, while taking care not to exceed the Qualified Joint & Survivor Annuity options under 26 C.F.R. §1.401(a)-11(b)(2)." (ECF No. 48 at 10). Plaintiff's current motion, however, fails to engage with that directive. Rather than

showing that the Plan's recalculation violates the Court's order or is otherwise arbitrary and capricious, Plaintiff merely presents an alternative calculation that he believes is more reasonable. (ECF No. 49).

Nonetheless, in response to the Plan's motion, Plaintiff argues that the Plan's decision was arbitrary and capricious because it: (1) perpetuates the myth that Gragg is receiving two Social Security checks each month; (2) does not provide Gragg with the level benefit he expected to receive; (3) ignores the discretion the Plan's text gives to the administrator to correct errors; (4) departs from the Plan's text in that it establishes two different accrued benefits based on two different determination dates; and (5) proposes to provide Gragg a form of benefit that is not available under the terms of the plan. (ECF No. 51 at 4).

Despite these contentions, this Court finds that the Plan has articulated a reasoned and legally supportable basis for its decisions in light of the Plan's provisions. *See, e.g.*, *Fenwick v. Hartford Life & Acc. Ins. Co.*, 457 F.Supp.3d 603, 616 (W.D.Ky. 2020) ("Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious."). As the Plan explains, its decision addresses the alleged "double counting" issue by preserving the original Social Security Leveling Option election under the UPS Pension Plan and substituting the Single Life Annuity—an actuarially equivalent benefit without an offset—for the UPS Retirement Plan benefit. (ECF Nos. 50 at 10; 52 at 3–4). While this resulted in an overpayment, the Plan decided to recover the excess by providing Plaintiff a net monthly benefit of $750 through 2028—an amount more than $300 higher than the Social Security Leveling Option he originally selected. The Plan will then increase the rate of recoupment beginning in 2029, when Plaintiff turns 75, by reducing the monthly benefit to $250. (ECF No. 52 at 5).

11

The Plan's approach not only addresses Plaintiff's core concern regarding "double counting" (ECF No. 49 at 2), but also complies with the Court's directive to prorate his Social Security benefit in accordance with IRS regulations governing joint and survivor annuities. (ECF No. 48 at 10).

Moreover, the Plan's recalculation is consistent with its own terms, as it used the highest monthly benefit option available to Plaintiff at the time of his retirement. (ECF Nos. 49-1 at 2; 52 at 2). The Plan also acted within its discretion in addressing the overpayment. The Plan explicitly provides:

> [I]f a benefit is paid under this Plan and it is thereafter determined by the Committee that such benefit should not have been paid, or that such benefit was overpaid (whether or not attributable to an error by the Participant, the Committee or any other person), then the Committee may take such action as it deems necessary or appropriate to remedy such situation, including, without limitation, deducting the amount of any overpayment theretofore made to or on behalf of the Participant from any succeeding payments to or on behalf of the Participant or instituting legal action to recover such overpayments. The period over which the Committee may recover any benefit overpayment shall not be limited by the period during which the error occurred.

(ECF Nos. 12-2 at PageID 504; 12-1 at PageID 127).

Accordingly, this Court finds that the Plan's recalculation was reasonable, consistent with the Plan's terms and the Court's prior order, and not arbitrary and capricious.

### B. Recalculation As If All Accrued Benefit Was Payable From a Single, Merged Plan

Turning now to the substance of Plaintiff's motion, Plaintiff's proposed calculation of benefits is inconsistent with the terms of the Plan. Under ERISA, courts interpret plan documents as they do contracts, by "looking to the terms of the plan" as well as to "other manifestations of the parties' intent." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989)).

Here, Plaintiff seeks to recalculate his monthly benefit "as if, at the time of his retirement, all of [his] accrued benefit was payable to him from a single, merged Plan and was payable to him under the Social Security leveling option." (ECF No. 49 at 5). In essence, Plaintiff requests that the Court retroactively treat two separate periods of covered service—under two separate plans—as a single, unified benefit calculation, even though the plans were distinct at the time of his retirement.

Plaintiff argues that the post-retirement merger of the UPS Retirement Plan and the UPS Pension Plan entitles him to the relief sought in his motion. (ECF Nos. 51 at 5; 52 at 6). Plan documents do not support this conclusion. Rather, they establish that while the plans were merged, the merger did not alter the nature or amount of accrued benefits.

The Plan identifies the following merger provision from the UPS Retirement Plan:

> (a) In the case of any merger or consolidation with, or transfer of assets and liabilities to, any other plan, provisions shall be made so that each Participant in the Plan on the date thereof (If the Plan then terminated) would receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he or she would have been entitled to receive immediately prior to the merger, consolidation or transfer if the Plan had been terminated.
>
> (b) Effective on December 31,2012 (the "Transfer Time"), all assets and liabilities of the Plan attributable to all Freight Employees (as defined below) shall be and hereby are transferred to and shall become assets and liabilities of the UPS Pension Plan. This transfer is evidenced by a Memorandum of Understanding executed by UPS Freight and by the Teamsters National UPS Freight Negotiating Committee (the "Teamster Committee") dated October 23, 2012.

(ECF No. 12-1 at PageID 507-08, 764-65). Both the UPS Pension Plan and the UPS Retirement Plan provide that the benefit eligibility and amounts in the plan may be "amended from time to time by any Collective Bargaining Agreement which governs participation in this Plan for such Participant and the terms of any such Collective Bargaining Agreement are incorporated herein by reference from the date such agreement becomes binding on the Employer." (ECF Nos. 12-1 at

13

PageID 101; 12-2 at PageID 507-08, 598). In turn, the Collective Bargaining Agreement provides that the UPS Retirement Plan shall be transferred to the UPS Pension Plan and confirms the intent that "[t]here shall be no change in the affected employees' accrued pension benefits." (ECF No. 16-2 at PageID 967).

Taken together, these provisions demonstrate that the merger did not retroactively combine the plans for purposes of recalculating accrued benefits. To the contrary, it preserved participants' existing benefit structures. Plaintiff's proposal would treat him as having a single, merged benefit at retirement, which would improperly enhance his accrued benefit in a manner not authorized by the Plan terms.

Even assuming Plaintiff's interpretation were reasonable, the proper inquiry under the arbitrary and capricious standard is whether the Plan's decision was supported by "a deliberate principled reasoning process" and "substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991); *see also Farhner*, 645 F.3d at 342 ("[I]f the Plan Administrator's decision is supported by substantial evidence, then it should be upheld."). "In other words, the Plan Administrator's decision should be 'rational in light of the [P]lan's provisions.'" *Farhner*, 645 F.3d at 342 (quoting *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997)).

Here, the Plan's interpretation—preserving the separation of the two plans at the time of retirement and recalculating benefits accordingly—was not only rational but consistent with the text of the plan documents. Indeed, this Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

14

Accordingly, the Plan's recalculation, and its rejection of Plaintiff's proposed calculation, was neither arbitrary nor capricious.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Entry of Judgment (ECF No. 49) is **DENIED,** and Defendant UPS Pension Plan's Motion (ECF No. 50) is **GRANTED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 22, 2025**